**KATHERINE CONNOLLY** (SBN 313640)
katie.connolly@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
555 California Street, Suite 3300
San Francisco, CA 94140
Tel. (628) 231-6800

**DANIEL MCNEEL LANE, JR.** (*Pro Hac Vice* Forthcoming)
neel.lane@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
111 W. Houston Street, Suite 1800
San Antonio, TX  78205
Tel. (210) 224-5575

**JEANNIE NGUYEN** (*Pro Hac Vice* Forthcoming)
jeannie.nguyen@nortonrosefulbright.com
NORTON ROSE FULBRIGHT US LLP
1301 McKinney, Suite 5100
Houston, Texas 77010-3095
Tel. (713) 651-5151

Attorneys for Plaintiff
HISCOX SYNDICATES LIMITED

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HISCOX SYNDICATES LIMITED, a Private Limited Company formed in England, | Case No. 4:23-cv-4033 |
| Plaintiff, | **COMPLAINT FOR INTERPLEADER** |
| vs. | |
| PAPER BIRD INC., a Delaware Corporation, SAMUEL BANKMAN-FRIED, NISHAD SINGH, RAMNIK ARORA, CLAIRE WATANABE, HOWARD ANDREW FISHER, AMY WU, ZIXIAO (GARY) WANG, RYAN SALAME, CAN SUN, CONSTANCE ZHE WANG, LUK WAI (JEN) CHAN, NATALIE TIEN, ZANE TACKETT, ZHONGYUAN (DAVID) MA, DANIEL FRIEDBERG, ROBIN MATZKE, PATRICK GRUHN, ROSS RHEINGANS-YOO, NICHOLAS BECKSTEAD, and JONATHAN CHEESMAN, | |
| Defendants. | |

DOCUMENT PREPARED
ON RECYCLED PAPER

Plaintiff Hiscox Syndicates Limited ("Hiscox") files this Complaint for Interpleader against Defendants Paper Bird Inc., Samuel Bankman-Fried, Nishad Singh, Ramnik Arora, Claire Watanabe, Howard Andrew Fisher, Amy Wu, Zixiao (Gary) Wang, Ryan Salame, Can Sun, Constance Zhe Wang, Luk Wai (Jen) Chan, Natalie Tien, Zane Tackett, Zhongyuan (David) Ma, Daniel Friedberg, Robin Matzke, Patrick Gruhn, Ross Rheingans-Yoo, Nicholas Beckstead, and Jonathan Cheesman (collectively, "Defendants" or "Insureds") in connection with Excess Insurance Policy No. B0146ERINT2201008 (the "Hiscox Policy")[1] issued to Paper Bird Inc. as the Named Insured and in support thereof, alleges as follows:

## I.     INTRODUCTION

1.      This matter involves the multiple insureds' competing claims to limited proceeds under the Hiscox Policy in connection with the collapse of FTX Trading Ltd. and related entities. Defendants are Paper Bird Inc.—the parent company of FTX Trading Ltd. and designated agent for individual insured persons who have not designated an alternative agent with respect to insurance matters—and the known individual insureds with a potential interest in the limits of the Hiscox Policy. Subject to all of its terms, conditions, and limitations, the Hiscox Policy provides a $5 million limit of liability in excess of $15 million in aggregate limits of underlying insurance. Any person who falls within the definition of "Insured Persons," including all persons who were, now are, or shall be an officer or director of Paper Bird Inc. and its subsidiaries, including persons unknown to Hiscox, has a potential claim for coverage under the Hiscox Policy.[2]

2.      Information available to Hiscox to date indicates that the $15 million in underlying limits will soon be exhausted and the $5 million in limits of the Hiscox Policy will not be sufficient to fully compensate the Defendants for covered amounts. Hiscox is unable to apportion insufficient policy limits among the known insureds under the terms of the Hiscox Policy and California law, which governs interpretation of the Hiscox Policy. Accordingly, Hiscox seeks to interplead its $5 million limits so as to ensure fair, expeditious disbursement of policy funds among the known

---

[1] Attached as Exhibit A to this Complaint.

[2] The Hiscox Policy defines "Insureds" to mean "all persons and entities covered under the Followed Policy," which, in turn, provides a broad definition for "Insured Persons." *See* Beazley Policy, § XIV. Definitions, attached as Exhibit B to this Complaint.

DOCUMENT PREPARED
ON RECYCLED PAPER

1  insureds and to address uncertainties for potential insureds in the future.

2  **II.     PARTIES**

3      3.      Plaintiff Hiscox Syndicates Limited is a private limited company formed under the

4  laws of England and Wales and equivalent to a corporation for purposes of its residency and

5  citizenship. Its principal place of business is in London, England. Hiscox Syndicates Limited is

6  the managing agent for Hiscox Syndicate 33, the lead syndicate on the Hiscox Policy.

7      4.      Defendant Paper Bird Inc. is a Delaware Corporation. Upon information and belief,

8  its principal place of business is at 3500 South Dupont Highway, Dover, Delaware 19901. Paper

9  Bird Inc. owns a majority interest in FTX Trading Ltd. and is one of the debtors and debtors-in-

10 possession (collectively, "FTX") in the jointly administered bankruptcy proceeding styled *In re*

11 *FTX Trading Ltd.*, Ch. 11 Case No. 22-11068-JTD (Bankr. D. Del).  Paper Bird Inc. may be served

12 with process of service by serving a copy of this Complaint on its Registered Agent: The

13 Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington,

14 Delaware 19801.

15     5.      Defendant Samuel Bankman-Fried is an individual who, upon information and

16 belief, is domiciled in the Bahamas and currently resides in Stanford, Santa Clara County,

17 California. Bankman-Fried may be entitled to coverage under the Hiscox Policy in connection with

18 his role as Chief Executive Officer and co-founder of FTX.  Bankman-Fried may be served with

19 process of service by serving a copy of this Complaint at his Stanford, California address.

20     6.      Defendant Nishad Singh is an individual who, upon information and belief, is

21 domiciled in the Bahamas and currently resides in Santa Clara, Santa Clara County, California.

22 Singh may be entitled to coverage under the Hiscox Policy in connection with his role as Head of

23 Engineering for FTX. Singh may be served with process of service by serving a copy of this

24 Complaint at his Santa Clara, California address.

25     7.      Defendant Ramnik Arora is an individual who, upon information and belief, is

26 domiciled in California and currently resides in Albany, Alameda County, California. Arora may

27 be entitled to coverage under the Hiscox Policy in connection with his role as Head of Product for

28 FTX. Arora may be served with process of service by serving a copy of this Complaint at his

1   Albany, California address.

2          8.      Defendant Claire Watanabe is an individual who, upon information and belief, is

3   domiciled in California and currently resides in Long Beach, Los Angeles County, California.

4   Watanabe may be entitled to coverage under the Hiscox Policy in connection with her role as

5   "Head of Brand and People" for FTX. Watanabe may be served with process of service by serving

6   a copy of this Complaint at her Long Beach, California address.

7          9.      Defendant Howard Andrew Fisher is an individual who, upon information and

8   belief, is domiciled in California and currently resides in Portola Valley, San Mateo County,

9   California. Fisher may be entitled to coverage under the Hiscox Policy in connection with various

10  matters related to the collapse of FTX.  Fisher may be served with process of service by serving a

11  copy of this Complaint at his Portola Valley, California address.

12         10.     Defendant Amy Wu is an individual who, upon information and belief, is domiciled

13  in Oregon and currently resides in Corvallis, Oregon. Wu may be entitled to coverage under the

14  Hiscox Policy in connection with various matters related to the collapse of FTX. Wu may be served

15  with process of service by serving a copy of this Complaint at her Corvallis, Oregon address.

16         11.     Defendant Zixiao (Gary) Wang is an individual who, upon information and belief,

17  is domiciled in the Bahamas and currently resides in Egg Harbor Township, New Jersey. Mr. Wang

18  may be entitled to coverage under the Hiscox Policy in connection with his role as Chief

19  Technology Officer and co-founder of FTX.  Mr. Wang may be served with process of service by

20  serving a copy of this Complaint at his Egg Harbor Township, New Jersey address.

21         12.     Defendant Ryan Salame is an individual who, upon information and belief, is

22  domiciled in Maryland and currently resides in Potomac, Maryland. Salame may be entitled to

23  coverage under the Hiscox Policy in connection with various matters related to the collapse of

24  FTX. Salame may be served with process of service by serving a copy of this Complaint at his

25  Potomac, Maryland address.

26         13.     Defendant Can Sun is an individual who, upon information and belief, is domiciled

27  in Washington and currently resides in Woodway, Washington. Sun may be entitled to coverage

28  under the Hiscox Policy in connection with various matters related to the collapse of FTX. Sun

may be served with process of service by serving a copy of this Complaint at his Woodway, Washington address.

14. Defendant Constance Zhe Wang is an individual who, upon information and belief, is domiciled in the Bahamas. Ms. Wang may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Ms. Wang may be served with process of service by serving a copy of this Complaint through her attorney Jason Weinstein, Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

15. Defendant Luk Wai (Jen) Chan is an individual believed who, upon information and belief, is domiciled in Hong Kong. Chan may be served with process of service by serving a copy of this Complaint through her attorney Jason Weinstein, Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

16. Defendant Natalie Tien is an individual who, upon information and belief, is domiciled in California and currently resides in San Francisco, San Francisco County, California. Tien may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Tien may be served with process of service by serving a copy of this Complaint at her San Francisco, California address.

17. Defendant Zane Tackett is an individual who, upon information and belief, is domiciled in Colorado and currently resides in Erie, Colorado. Tackett may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Tackett may be served with process of service by serving a copy of this Complaint at his Erie, Colorado address.

18. Defendant Zhongyuan (David) Ma is an individual who, upon information and belief, is domiciled in Hong Kong. Ma may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Ma may be served with process of service by serving a copy of this Complaint through his attorney Jason Weinstein, Steptoe & Johnson, LLP, 1330 Connecticut Avenue, NW, Washington, DC 20036.

19. Defendant Daniel Friedberg is an individual who, upon information and belief, is domiciled in Washington and currently resides in Seattle, Washington. Friedberg may be entitled

DOCUMENT PREPARED
ON RECYCLED PAPER

to coverage under the Hiscox Policy in connection with his role as Chief Regulatory Officer for FTX. Friedberg may be served with process of service by serving a copy of this Complaint at his Seattle, Washington address.

20.     Defendant Robin Matzke is an individual who, upon information and belief, is domiciled in Germany.  Matze may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX.  Matzke may be served with process of service by serving a copy of this Complaint through his attorney Heath Rosenblat, Morrison Cohen, LLP, 909 Third Avenue, New York, New York 10022-4784.

21.     Defendant Patrick Gruhn is an individual who, upon information and belief, is domiciled in Oregon and currently resides in Yachats, Oregon. Gruhn may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Gruhn may be served with process of service by serving a copy of this Complaint at his Yachats, Oregon address.

22.     Defendant Ross Rheingans-Yoo is an individual who, upon information and belief, is domiciled in Maine and currently resides in Orono, Maine. Rheingans-Yoo may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Rheingans-Yoo may be served with process of service by serving a copy of this Complaint at his Orono, Maine address.

23.     Defendant Nicholas Beckstead is an individual who, upon information and belief, is domiciled in California and currently resides in Oakland, Alameda County, California. Beckstead may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Beckstead may be served with process of service by serving a copy of this Complaint at his Oakland, California address.

24.     Defendant Jonathan Cheesman is an individual who, upon information and belief, is domiciled in England. Cheesman may be entitled to coverage under the Hiscox Policy in connection with various matters related to the collapse of FTX. Cheesman may be served with service of process by serving a copy of this Complaint through his attorney Christopher Clark, Clark Smith Villazor, LLP, 250 W. 55th Street, New York, New York 10019.

### III. JURISDICTION AND VENUE

25. This Court has original jurisdiction over this matter under 28 U.S.C. § 1335 because there are at least two adverse claimants of diverse citizenship, as defined by 28 U.S.C. § 1332(a), who may claim to be entitled to the proceeds of the Hiscox Policy exceeding $500 or more.

26. In addition, or in the alternative, this Court has original jurisdiction over this matter under Federal Rule of Civil Procedure 22 and 28 U.S.C. § 1332(a) because when this Complaint was filed, Hiscox was diverse from each claimant and the amount in controversy exceeded $75,000, excluding interest and costs.

27. In addition, or in the alternative, this Court has original jurisdiction over this matter because it is related to a bankruptcy case pursuant to 28 U.S.C. § 1334.

28. Venue is proper in this district under 28 U.S.C. § 1397 because one or more of the claimants resides in this district.

29. In addition, or in the alternative, venue is proper in this district under 28 U.S.C. § 1391(b)(2) because at least one of the notified matters for which the claimants may be entitled to coverage under the Hiscox Policy is pending in this district.

### IV. FACTUAL BACKGROUND

30. On November 25, 2022, Paper Bird Inc., on behalf of all insureds, provided notice of various matters in connection with the collapse of FTX to its directors and officers liability insurers. A list of matters for which Hiscox has received notice is attached to this Complaint as Appendix A.

31. Paper Bird Inc. has a $20 million tower of directors and officers liability insurance policies in effect from August 4, 2022 until August 4, 2023:

| Policies | Limits of Liability |
|---|---|
| Beazley Policy No. B0146ERINT2200905 | $5 million |
| QBE Policy No. 130003250 | $5 million excess of $5 million |
| CNA Policy No. 652453460 | $5 million excess of $10 million |
| Hiscox Policy No. B0146ERINT2201008 | $5 million excess of $15 million |

32.     The Hiscox Policy is the third-layer excess policy in Paper Bird Inc.'s directors and officers insurance tower and provides Side A coverage only. Side A coverage is designed to protect individual directors and officers from claims for alleged wrongful acts when they are not indemnified by the company for whom they serve as directors or officers.

33.     By its terms, the Hiscox Policy provides a $5 million limit of liability and attaches upon exhaustion of the $15 million in aggregate limits of Underlying Insurance through payments by, or on behalf of, or in place of the insurers of the Underlying Insurance.[3]

34.     Except for the limit of liability, the premium, and as otherwise provided, the Hiscox Policy incorporates the terms, conditions, and limitations of the primary policy issued by Certain Underwriters at Lloyd's, London ("Beazley"), Policy No. B0146ERINT2200905 (the "Beazley Policy" or "Followed Policy"),[4] which provides a $5 million aggregate limit of liability, subject to various sublimits for certain costs.

35.     Besides the Beazley Policy, the Underlying Insurance includes the first-layer excess policy issued by QBE Insurance Corporation ("QBE") and the second-layer excess policy issued by Continental Casualty Company ("CNA"), each providing limits of $5 million subject to its own terms, conditions, and limitations, as well as certain terms, conditions, and limitations incorporated from the Beazley Policy.

36.     On March 29, 2023, Beazley issued letters to the then-known Insureds with a proposed distribution plan. Beazley proposed paying covered costs incurred during two-month payment periods, starting with the period running from November 1, 2022 through December 31, 2022. Beazley indicated it would review invoices submitted for payment by the Insureds, evaluate coverage for the defense costs sought in those invoices, and make payments until the covered defense costs exceeded the remaining aggregate policy limit, at which point Beazley would pay an equal percentage of each Insured's covered defense costs up to the limit of the Followed Policy. Beazley also requested that counsel agree to certain discounts of standard billing rates and capped

---

[3] The Hiscox Policy defines "Underlying Insurance" to mean "the Followed Policy and all other underlying insurance policies, if any, identified in Item 7. of the Declarations."

[4] Attached as Exhibit B to this Complaint.

DOCUMENT PREPARED
ON RECYCLED PAPER

hourly rates for partners, counsel, and associates. Beazley reserved the right to adjust the rate caps based on developments in the FTX bankruptcy proceedings. Receiving no objections, Beazley began its review and payment of invoices submitted by the Insureds.

37.     On June 6, 2023, Beazley advised QBE, CNA, and Hiscox (collectively, "Excess Insurers") that the $5 million limit of the Beazley Policy would soon be exhausted by the payment of covered costs submitted by the Insureds for the first two payment periods. Shortly thereafter, the $5 million limits of the Beazley Policy were exhausted in the partial payment of invoices submitted by the Insureds for the second payment period, running from January 1, 2023 through February 28, 2023.

38.     On or about June 16, 2023, QBE issued letters reserving its rights and advising the then-known Insureds that the defense costs for which coverage is being claimed under the QBE Policy would likely exceed the $10 million combined limit of the QBE and Beazley Policies. QBE requested responses from the Insureds as to whether they had (1) any objections to QBE processing and payment of defense costs in the manner adopted by Beazley, and (2) any objections to QBE's payment of invoices on behalf of any other Insured.

39.     On July 11, 2023, CNA issued letters reserving its rights and advising the then-known Insureds that the defense costs for which coverage is being claimed under the CNA Policy would likely exceed the $15 million combined limit of the CNA, QBE, and Beazley Policies. CNA requested responses from the Insureds as to whether they had (1) any objections to CNA processing and payment of defense costs in the manner adopted by Beazley, and (2) any objections to CNA's payment of invoices on behalf of any other Insured.

40.     In early to mid-July 2023, upon information and belief, Daniel Friedberg, an individual who may qualify as an Insured under the Hiscox Policy, objected to processing and payment of defense costs pursuant to Beazley's distribution plan.

41.     On July 24, 2023, Hiscox issued letters reserving its rights and advising the then-known Insureds that the defense costs for which coverage is being claimed under the Hiscox Policy would likely exceed the $20 million combined limit of the Hiscox Policy and the Underlying Insurance. Hiscox advised the Insureds that at least one individual who may qualify as an Insured

under the Hiscox Policy has objected to the Excess Insurers' processing and payment of defense costs pursuant to Beazley's distribution plan. Hiscox requested that the Insureds either agree or decline to expressly waive objections to Hiscox's processing and payment of defense costs in the manner adopted by Beazley.

42.    To date, the Insureds who have responded to the Excess Insurers' letters have indicated that they do not object to processing and payment of defense costs in the manner adopted by Beazley. However, several Insureds have conditioned their responses based on known information or reserved the right to object based on information that may develop in the future. Some of the Insureds have potentially adverse interests or are involved in pending matters which cannot be disclosed to other Insureds. Furthermore, some of the Insureds have not responded to the Excess Insurers' letters or additional letters for clarification at all.

43.    Despite terms in the Beazley Policy providing that Paper Bird Inc. will act on behalf of individual insured persons who have not designated an alternative agent with respect to giving and receiving notice for insurance matters—terms wholly incorporated in the Hiscox Policy—Paper Bird Inc. has expressly denied that it represents the interests of any individuals currently seeking coverage under the directors and officers liability insurance policies issued to Paper Bird Inc.[5]

44.    On August 4, 2023, after the deadline by which Hiscox requested responses to its letter dated July 24, 2023, Paper Bird Inc. advised that Robin Matzke, Patrick Gruhn, Ross Rheingans-Yoo, Nicholas Beckstead, and Jonathan Cheesman may qualify as Insureds under the Hiscox Policy. In order to avoid delay, these individuals are named as Defendants in this Complaint because they have a potential interest in the proceeds of the Hiscox Policy.

45.    To date, Hiscox has not received a response to its letter to Daniel Friedberg.

46.    Samuel Bankman-Fried advised the Excess Insurers that delaying payment may materially prejudice his defense in criminal proceedings currently scheduled for trial later this year.

47.    The Hiscox Policy incorporates terms of the Beazley Policy which require advancement or payment of covered defense costs "on a current basis but no less than once every

---

[5] *See* Beazley Policy, § VIII.D. Company Authorization Clause.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   sixty (60) days."[6]

2       48.     The Hiscox Policy is governed by California Law.[7] Under California law, an excess

3   insurer, with notice of potentially competing claims that exceed policy limits, has an obligation to

4   treat all of its insureds fairly. *Schwartz v. State Farm Fire & Casualty Co.*, 88 Cal. App. 4th 1329,

5   106 Cal. Rptr. 2d 523 (2001); *Shell Oil Co. v. National Union Fire Insurance Co.*, 44 Cal. App.

6   4th 1633, 52 Cal. Rptr. 2d 580 (1996). The obligation to treat all insureds fairly includes the duty

7   to refrain from favoring one insured over another and from impairing any insured's right to

8   benefits. *Schwartz*, 88 Cal. App. 4th at 1335. Furthermore, this obligation is owed by an excess

9   insurer before an interest in limited policy proceeds has matured to the point of requiring payment.

10  *Id.* at 1338. California courts have held that an insurer facing multiple claims on a limited pool of

11  funds may seek a negotiated agreement among the insureds as to a fair apportionment of the pool

12  of funds or file an interpleader action. *Id.* at 1341.

13      49.     In addition to Hiscox's desire to avoid prejudice to any Insured and to make timely

14  payments, Hiscox is concerned that the appropriate apportionment among the Insureds of

15  aggregate limits—including underlying limits paid by other insurers—may be affected by facts

16  that emerge in the future.

17      50.     Under the circumstances, Hiscox has a good faith reason to believe that it will not

18  be able to disburse the limits of the Hiscox Policy among the Insureds in a manner that is consistent

19  with its obligations under both the policy language and California law.

20      51.     Hiscox cannot maintain confidentiality owed to each Insured while also providing

21  a meaningful explanation for its payment of other Insureds' defense costs, and the Insureds do not

22  currently have access to information which may later form the basis of an objection to Hiscox's

23  coverage decisions.

24      52.     Accordingly, Hiscox has filed this interpleader now, before the limits of the QBE

25  and CNA Policies have been exhausted, to expedite resolution of potentially competing claims and

26  to minimize prejudice resulting from delay.

27
28  [6] Beazley Policy, § IV.D. Advancement of Policy Costs.
    [7] Hiscox Policy, Endorsement No. 3.

**<u>COUNT I:</u>**
**INTERPLEADER RELIEF**
**28 U.S.C. § 1335 or FEDERAL RULE OF CIVIL PROCEDURE 22**

53.     Hiscox adopts and incorporates by reference each and every allegation contained in the foregoing paragraphs as if set forth fully herein.

54.     Hiscox is in possession of the $5 million limits of the Hiscox Policy.

55.     The Defendants each may claim a right to disbursements under the Hiscox Policy, subjecting Hiscox to conflicting demands which it cannot resolve.

56.     Hiscox is unable to determine, without potentially exposing itself to multiple liabilities, how to fairly apportion limited policy proceeds among the Defendants and other potential individuals who may be entitled to proceeds under the Hiscox Policy.

57.     Hiscox claims no interest in the $5 million limits of the Hiscox Policy and is prepared to deposit policy limits into the registry of the Court upon entry of an order for such payment of funds.

58.     Hiscox has incurred costs and reasonable attorneys' fees relating to this action in an amount to be proven and may continue to incur fees and costs until the matter is adjudicated with finality as to Hiscox's obligations. The Court may award attorneys' fees and costs to a disinterested stakeholder in an interpleader action.

59.     Accordingly, Hiscox requests that the Court issue an order granting relief available under 28 U.S.C. § 1335 or, in the alternative, Federal Rule of Civil Procedure 22:

a.     Allow Hiscox to deposit policy limits into the registry of the Court;

b.     Discharge Hiscox from further liability;

c.     Dismiss Hiscox with prejudice from the interpleader action;

d.     Enjoin the Defendants and future claimants from future litigation against Hiscox in connection with payment of the policy funds;

e.     Require the Defendants to litigate any claims related to the policy funds in this interpleader action; and

f.     Award Hiscox attorneys' fees and costs incurred in this interpleader action.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hiscox Syndicates Limited respectfully prays for the following relief:

A.    Enter an order allowing Hiscox to deposit policy limits into the registry of the Court;

B.    Discharge Hiscox, a disinterested stakeholder, from further liability;

C.    Dismiss Hiscox with prejudice from this interpleader action;

D.    Enjoin the Defendants and future claimants from future litigation against Hiscox in connection with payment of the policy funds;

E.    Require the Defendants to litigate any claims related to the Hiscox Policy in this interpleader action;

F.    Award Hiscox attorneys' fees and costs incurred in this interpleader action; and

G.    Grant Hiscox other and further relief to which it is justly entitled.

Dated:  August 9, 2023                    **NORTON ROSE FULBRIGHT US LLP**

By:    _/s/Katherine Connolly_
         Katherine Connolly

Attorney for Plaintiff
HISCOX SYNDICATES LIMITED